[Cite as *State v. Cyphers*, 2026-Ohio-2200.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-43 |
| Appellee | : | |
| | : | Trial Court Case No. 25-CR-0015 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| HARLEY CYPHERS | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 12, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

CHARLYN BOHLAND, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Harley Cyphers appeals his conviction of murder, which followed his guilty plea. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background

{¶ 2} In September 2024, Cyphers shot and killed his father. Because he was 16 years old at the time of the shooting, Cyphers was charged in juvenile court with crimes that would have constituted murder and felonious assault had he been an adult. Following a probable cause hearing, the juvenile court relinquished jurisdiction and transferred the matter to the General Division of the Clark County Court of Common Pleas. Thereafter, Cyphers was indicted on three counts of murder and two counts of felonious assault. All of the counts had attached firearm specifications.

{¶ 3} Prior to trial, defense counsel filed several motions, including a motion for funds to hire an expert to determine whether Cypher had the capacity to have waived his *Miranda* rights prior to being interviewed by the police, a motion to suppress statements made during the police interview, and a motion to appoint a guardian ad litem. Relevant to this appeal, counsel also filed a motion requesting funds to retain Dr. Robert Stinson to conduct an expert evaluation regarding battered child syndrome. The trial court granted the motion for funds to determine Cypher's capacity to waive his *Miranda* rights but denied the remaining motions.

{¶ 4} Following plea negotiations, Cyphers entered a guilty plea to one count of murder in violation of R.C. 2903.02(A), as well as the attached firearm specification.

2

The remaining charges were dismissed. The trial court sentenced Cyphers to a prison term of 15 years to life plus a consecutive term of 3 years on the firearm specification for a total term of 18 years to life.

**{¶ 5}** Cyphers appeals.

## II. Analysis

**{¶ 6}** Cyphers's four assignments of error are as follows:

The trial court committed plain error and abused its discretion when it failed to properly consider indigent-child Harley Cyphers' particularized request for funds to hire a battered child expert.

The trial court violated Harley Cyphers' right to due process when it deprived him of the ability to present a complete defense.

The trial court exceeded its authority and erred in its understanding of what constitutes self-defense.

The trial court's misconceptions about battered child syndrome and proving self-defense infected its decision-making in assessing the particularized request.

**{¶ 7}** At the outset, we note that a guilty plea is a complete admission of guilt. *State v. Faulkner*, 2015-Ohio-2059, ¶ 9 (2d Dist.). As such, a guilty plea waives all appealable errors, including claims of error in pre-trial rulings made by the trial court and claims of ineffective assistance of counsel, unless they implicate the validity of the plea. *State v. Belton*, 2016-Ohio-1581, ¶ 83; *State v. Montgomery*, 2007-Ohio-439, ¶ 19 (2d Dist.); *State v. Stivender*, 2011-Ohio-247, ¶ 15 (2d. Dist.). In other words, such claims may be raised on appeal only if the actions of the trial court and trial counsel rendered the plea other than knowing, intelligent, and voluntary. *State v. Riddle*, 2017-Ohio-1199, ¶ 29 (2d Dist.).

3

**{¶ 8}** In order to be constitutionally valid and comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Bateman*, 2011-Ohio-5808, ¶ 5 (2d Dist.), citing *Boykin v. Alabama*, 395 U.S. 238 (1969). "'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.'" *State v. Redavide*, 2015-Ohio-3056, ¶ 10 (2d Dist.), quoting *State v. Barner*, 2012-Ohio-4584, ¶ 7 (4th Dist.).

**{¶ 9}** "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2011-Ohio-1738, ¶ 6 (2d Dist.). "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty." *State v. Veney*, 2008-Ohio-5200, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2015-Ohio-3793, ¶ 12 (2d Dist.), citing *Redavide* at ¶ 12.

**{¶ 10}** Crim.R. 11(C)(2) provides that a trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to

4

confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**The Guilty Plea was Knowing, Intelligent, and Voluntary and Cyphers's Due Process Rights Were Not Violated**

{¶ 11} Cyphers does not argue that the trial court failed to comply with Crim.R. 11. And our review of the plea colloquy confirms that it was complete and without incident. Instead, Cyphers asserts the trial court's decision revealed a fundamental misunderstanding of how battered child syndrome can, with expert testimony, support a self-defense claim. *See State v. Nemeth*, 82 Ohio St.3d 202 (1998). Cyphers claims that this misunderstanding resulted in the funding motion being improperly denied and that, without an expert, he was left with no viable defense. Cyphers, from this, posits that the trial court's erroneous ruling made his plea less than knowing and intelligent and that, with his only possible defense eliminated, his plea was coerced and, thus, involuntary.

{¶ 12} Cyphers's argument must be analyzed under the Ohio Supreme Court's recent decision in *State v. Gowdy*, 2025-Ohio-5575. Gowdy was indicted on two counts of felonious assault, with the first count including two firearm specifications. Before trial, Gowdy indicated his intent to assert a self-defense claim. On the scheduled trial date, the trial court had a long and, at times, contentious discussion with Gowdy concerning whether a self-defense jury instruction would be appropriate. During this discussion, the trial court made incorrect statements concerning application of R.C. 2901.05(B), Ohio's self-defense statute, and also prematurely indicated that a self-defense instruction would not be given. *Id.* at ¶ 14. Gowdy, after indicating that he had been "put in a box" and that he was "physically and mentally

5

exhausted," pleaded guilty to the inferior offense of aggravated assault along with a three-year firearm specification. *Id.* at ¶ 7, 9. The trial court imposed a four-year prison term. *Id.* at ¶ 13.

{¶ 13} The First District Court of Appeals affirmed Gowdy's conviction, finding that the trial court's misstatements and too-early rejection of a self-defense instruction did not make the plea less than knowing, intelligent, and voluntary. *Id.* at ¶ 14. The Supreme Court accepted Gowdy's appeal on the following two propositions of law:

I. A guilty plea must be vacated when it is not made knowingly, voluntarily, and intelligently because the trial court coerced the defendant into entering a plea of guilty by telling him prior to trial . . . that [the court] would not give a jury instruction on self-defense without having heard all the evidence.

II. The trial court erred to the prejudice of Mr. Gowdy by denying him his constitutional right to a jury trial.

*Gowdy* at ¶ 15.

{¶ 14} The Supreme Court first concluded that the trial court's "misstatements of law did not affect Gowdy to the point that they obscured his knowledge of the charges against him or the rights he was waiving." Moreover, the trial court's compliance with Crim.R. 11 ensured that Gowdy "understood the effects of his plea, including that he was waiving his right to a jury trial." *Id.* at ¶ 34. Based on these determinations, the Supreme Court concluded that Gowdy's guilty plea was knowing and intelligent.

{¶ 15} The Supreme Court then turned to Gowdy's argument that the plea was coerced and thus involuntary. Underpinning Gowdy's coercion argument was the reality that, without a self-defense instruction, a not-guilty verdict was virtually impossible, explaining his lament that he had been "put in a box." Rejecting this argument, the Supreme Court stated

6

that while Gowdy may have understandably been dissatisfied with his situation, such dissatisfaction did not render the plea involuntary. *Gowdy*, 2025-Ohio-5575, at ¶ 41, citing *Brady v. United States*, 397 U.S. 742, 750-751 (1970). The Supreme Court reached this conclusion because Gowdy was able to "rationally weigh" the situation, and the trial "judge's conduct was not so overbearing that it clouded Gowdy's choice." *Id.* at ¶ 42.

**{¶ 16}** The *Gowdy* decision concluded with the following language:

Gowdy faced a difficult decision: plead guilty to a lesser charge or go to trial and risk receiving a potentially longer sentence. Gowdy made his choice. He may not now assert that the trial court's misstatements of law, which had no effect on the Crim.R. 11 colloquy, rendered his plea unknowing and unintelligent and that the court's expressions of its disinclination to give a self-defense jury instruction coerced him into pleading guilty, thereby rendering his plea involuntary. Gowdy was free to go to trial and request the self-defense jury instruction then, but he did not. The trial court complied with the requirements of Crim.R. 11, and Gowdy has not shown otherwise.

*Id.* at ¶ 44.

**{¶ 17}** Turning to Cyphers's appeal, we first note that the trial court's expert funding decision did exhibit a misunderstanding regarding the necessity for expert testimony to support a battered child syndrome self-defense claim, and further, the decision articulated premature factual conclusions regarding the viability of a self-defense claim. Thus, for purposes of this decision, and putting aside that it is unknown whether Dr. Stinson would have supported a self-defense claim, we assume the trial court erred when it denied the funding motion. But, under *State v. Gowdy*, this error is harmless unless it rendered

7

Cyphers's guilty plea less than knowing, intelligent, and voluntary. As explained below, on this record, we conclude that Cyphers's plea was knowing, intelligent, and voluntary.

**{¶ 18}** A trial court's compliance with Crim.R. 11 is typically sufficient to ensure that a guilty plea is knowing, intelligent, and voluntary. *State v. Cole*, 2015-Ohio-3793, at ¶ 12 (2d Dist.). The trial court's Crim.R. 11 colloquy with Cyphers was complete, without any misstatements of law, and without incident. Nothing occurred during the plea hearing that indicated that Cyphers had any misapprehension about the rights—including the right to a jury trial—being forfeited or that the plea was not voluntary.

**{¶ 19}** As to the knowing and intelligent prongs of the plea analysis, Cyphers attempts to overcome the Crim.R. 11 compliance by suggesting that his age prevented a knowing and intelligent plea. The record indicates otherwise.

**{¶ 20}** Dr. Daniel Hrinko conducted a forensic evaluation of Cyphers as a required part of the juvenile bindover procedure. Dr. Hrinko opined that Cyphers was "able to comprehend and appreciate the charges against him . . . [and that he was] able to [also] comprehend and appreciate the consequences that may be imposed or result from the proceedings." After bindover to adult court and two months before Cyphers pleaded guilty, Dr. Scott Kidd conducted a forensic evaluation to determine Cyphers's competence to waive *Miranda* rights. Dr. Kidd concluded that Cyphers was "capable of understanding and appreciating the *Miranda* warnings and the consequences of waiving the rights at the time of the [police] interrogation, and thus capable of making a knowing and intelligent waiver of his *Miranda* rights."

**{¶ 21}** The forensic evaluations and Cyphers's answers during the plea hearing are at odds with any argument that, because of Cyphers's age or otherwise, he did not knowingly and intelligently enter the guilty plea.

8

{¶ 22} With respect to whether the plea was voluntary, Cyphers argues that the funding decision left him without a viable defense and no real choice but to accept the plea offer. Cyphers suggests that this circumstance rendered the plea coerced and thus involuntary.

{¶ 23} Cyphers had a difficult choice—accept the plea offer or proceed to trial and, if convicted (which was quite probable), appeal the trial court's funding decision. This "predicament" did not render the plea coerced. *Gowdy*, 2025-Ohio-5575, at ¶ 41. Moreover, there is nothing to suggest that Cyphers "was unable to rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Id.* at ¶ 42. Unlike *State v. Gowdy*, the trial court did not engage in any "overbearing" conduct that would have "clouded [his] choice." *Id.* Under the totality of circumstances, Cyphers's plea was voluntary.

{¶ 24} Cyphers's first assignment of error is overruled because any error in the trial court's funding decision did not render the plea less than knowing, intelligent, and voluntary. And the second assignment of error is overruled because Cyphers, despite the funding decision, retained the due process rights of a trial and an appeal.

**Trial Counsel Was Not Ineffective**

{¶ 25} Cyphers's third assignment of error argues that he was denied the effective assistance of counsel and that this affected the knowing, intelligent, and voluntary nature of the plea. We disagree.

{¶ 26} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at 687;

*Bradley* at paragraph two of the syllabus. In order to demonstrate prejudice after entering a guilty plea, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *State v. Romero*, 2019-Ohio-1839, ¶ 16, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

{¶ 27} Cyphers first argues that trial counsel's representation was deficient because he did not file a motion to reconsider the expert funding decision. Cyphers does not explain what should have been included in a motion for reconsideration or how such a motion was likely to change the trial court's decision. There is simply no basis to conclude either that trial counsel should have filed a motion seeking reconsideration or that the failure to do so prejudiced Cyphers.

{¶ 28} Cyphers next asserts that trial counsel was ineffective because he did not make an evidentiary proffer regarding the parental abuse Cyphers endured. But, contrary to Cyphers's suggestion, this failure did not prevent the funding issue from being raised on appeal.

{¶ 29} Finally, Cyphers argues that counsel's failure to timely file a notice of self-defense constituted ineffective assistance. It is true that trial counsel did not, as required by Crim.R. 12.2, file a notice of self-defense 30 days before the June 2, 2025 trial date. Instead, counsel, on May 14, 2025, filed the funding motion requesting that Cyphers be evaluated by Dr. Robert Stinson. The trial court's decision denying the motion stated that a "final reason" Cyphers did not have a "viable self-defense claim [was] because . . . he [had] not filed a timely notice of self-defense . . . ." But any fair reading of the trial court's decision compels the conclusion that a timely self-defense notice would not have altered the trial court's decision. Prejudice simply cannot be demonstrated.

{¶ 30} Having found no ineffective assistance of counsel, Cyphers's third assignment of error is overruled.

{¶ 31} In the fourth assignment of error, Cyphers argues that the trial court's errors and trial counsel's ineffective assistance made his plea not knowing, intelligent, and voluntary. Having already found Cyphers's guilty plea was knowing, intelligent, and voluntary, the fourth assignment of error is overruled.

## III. Conclusion

{¶ 32} All of Cyphers's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.