[Cite as *State v. Ashley*, 2019-Ohio-5007.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                      :
                                                   :
    Plaintiff-Appellee                 :    Appellate Case No. 28377
                                                   :
v.                                                 :    Trial Court Case No. 2019-CR-261
                                                   :
JAMAL ASHLEY                                       :    (Criminal Appeal from
                                                   :     Common Pleas Court)
    Defendant-Appellant                :
                                                   :

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of December, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Liberty Tower, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Jamal Ashley appeals from a judgment convicting him of having weapons while under disability (prior offense of violence), contending that his guilty plea to that offense was not knowingly, intelligently, and voluntarily made. The judgment of the trial court will be affirmed.

**Factual and Procedural Background**

{¶ 2} Ashley was indicted by a Montgomery County grand jury on one third-degree felony count of domestic violence in violation of R.C. 2919.25(A), and one third-degree felony count of having weapons while under disability (prior offense of violence) in violation of R.C. 2923.13(A)(2). He initially entered a plea of not guilty to both offenses. Ashley's appointed counsel requested and was granted a mental competency evaluation on his behalf. The parties stipulated to the resulting report, and the trial court on April 9, 2019 found Ashley competent to stand trial.

{¶ 3} On the same date, pursuant to a plea agreement between the parties, the court proceeded to take Ashley's guilty plea, as follows:

The Court: * * * It's my understanding, then, that * * * the State has agreed to dismiss the domestic violence, F3. The defendant will plead to having weapons while under disability, a felony of the third degree, and that [sic] there is no agreement as to sentence. The Court will order a presentence investigation. The defendant will be back in three weeks on April 30th for sentencing.

Is that the State's agreement and understanding?

[Assistant prosecutor]: Yes, Your Honor. Thank you.

The Court: And, [defense counsel]?

[Defense counsel]: Yes, Your Honor.

The Court: Mr. Ashley, is [that] your agreement and understanding?

[Ashley]: Yes.

The Court: Is that what you want to do today?

[Ashley]: Yes.

* * *

The Court: * * * How far did you go in school?

[Ashley]: 12th.

The Court: Were you able to read and understand the plea form that [defense counsel] went over with you?

[Ashley]: Yes.

The Court: Do you have any questions about that document?

[Ashley]: No.

The Court: Are you currently under the influence of any drug, alcohol, or medication?

[Ashley]: Yes.

The Court: What are you taking?

[Ashley]: Psych meds.

The Court: Does it [sic] in any way affect your ability to understand what we're doing here today?

[Ashley]: No.

The Court: All right. Are you understanding everything?

[Ashley]: Yes.

The Court: All right. Is there any other reason you couldn't understand your rights as I'm going to read them to you?

[Ashley]: No.

(Tr., pp. 5-7).

{¶ 4} The trial court then reviewed the terms of Ashley's plea agreement, the nature of the charges, the effect of his plea, the possible sentencing range and other possible consequences of his guilty plea, and the constitutional rights he would be waiving. The assistant prosecutor also read into the record the Count Two charge to which Ashley would be pleading. After each statement, Ashley affirmed his understanding of that component.

{¶ 5} At the end of the plea colloquy, Ashley signed a written waiver and plea form (see Doc. #32) and also orally entered a plea of guilty to having weapons while under disability. Immediately thereafter, the court stated in part:

The Court * * * finds that [Ashley] understood the effect of his plea. The plea was made voluntarily and there is a factual basis for that plea. The Court accepts that plea of guilty, enters a finding of guilty, and orders that the plea form be filed with the clerk. Sir, I am going to order a presentence investigation. * * * [Y]ou'll be back three weeks from today * * * for sentencing.

(Tr., pp. 12-13).

{¶ 6} Three weeks later, after receiving and reviewing the presentence investigation report, the trial court entered a judgment sentencing Ashley to 18 months in

prison, along with three years of post-release control following his release. (Doc. #38).

{¶ 7} Ashley appeals from that judgment, raising this single assignment of error: "[Ashley] did not enter his plea knowingly, intelligently, and voluntarily."

## Standard of Review/Applicable Law

{¶ 8} To comport with due process and be constitutionally valid, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Miller*, 2017-Ohio-478, 84 N.E.3d 150, ¶ 9 (2d Dist.), citing *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To determine whether a particular plea met those criteria, " 'an appellate court examines the totality of the circumstances through a *de novo* review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " (Italics sic.) *State v. Davis*, 2d Dist. Clark No. 2018-CA-49, 2019-Ohio-1904, ¶ 15, quoting *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 10, quoting *State v. Barner*, 4th Dist. Meigs No. 10CA9, 2012-Ohio-4584, ¶ 7.

{¶ 9} "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6. "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12, citing *Redavide* at ¶ 12.

{¶ 10} Pursuant to Crim.R. 11(C)(2), the trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 11} "The trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of constitutional rights." *Russell* at ¶ 7, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31. However, the trial court need only substantially comply with the non-constitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *Cole* at ¶ 12, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." (Citations omitted.) *Nero* at 108.

### Ashley's Assignment of Error

{¶ 12} Ashley does not claim that the trial court wholly failed to address with him

any particular component outlined in Crim.R. 11(C). Rather, he contends that the trial court erred in two narrower respects in accepting his guilty plea. First, Ashley maintains that at the time of his plea, he "was on psychotropic medication which may [have] affect[ed] his abilit[y] to understand the proceedings and the effect of his plea." He faults the trial court for not inquiring further about the types of medications Ashley was taking and for not seeking his trial attorney's opinion regarding Ashley's "mental state." Second, he argues that he "did not understand the effect of his guilty plea, the consequences of such, and the rights he was waiving * * *" due to a purported "breakdown in communications" with his trial attorney. Because neither of Ashley's arguments is substantiated by the record, his assignment of error is not well taken.

### a. Influence of drugs

{¶ 13} "Criminal defendants are rebuttably presumed to be competent to stand trial." *State v. Ferguson*, 2018-Ohio-987, 108 N.E.3d 1161, ¶ 17 (2d Dist.), citing R.C. 2945.37(G). Given that presumption, "the burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *Id.* at ¶ 20, citing *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-738, 804 N.E.2d 1. Pursuant to statute, a defendant is not incompetent to stand trial solely because he "is receiving or has received psychotropic drugs or other medication." R.C. 2945.37(F).

{¶ 14} "The test for competency to enter a guilty plea is the same as that used for determining competency to stand trial." *State v. Furlow*, 2d Dist. Montgomery No. 16403, 1998 WL 257877, *1 (May 22, 1998). In Ashley's case, the trial court determined that he was competent to stand trial on the same day that it accepted his guilty plea. The recent mental health report on which that determination was based constituted credible evidence

that Ashley was capable of entering a knowing and intelligent plea. A defendant's use of psychotropic medication did not alone erode the effectiveness of a competency determination. *See State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial."); *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 36-39 (affirming effectiveness of jury waiver of defendant who "was on medication * * * [but] denied that the medication interfered with his ability to understand the * * * proceedings"); *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 38 (finding that defendant's taking of antidepressant medications would not have affected the trial court's competency findings); *State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 16 ("The mere fact that a defendant * * * was taking psychotropic medication * * * when he entered a guilty plea is not an indication that his plea was not knowing and voluntary, that [he] lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting [his] guilty plea.").

{¶ 15} Where the record "directly refutes [an appellant's] claim that he was so heavily drugged that he was unable to enter a knowing, intelligent, and voluntary plea," we have overruled the appellant's assignment of error based on that allegation. *See State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 8-14. In *Hess*, the defendant advised the trial court at the time of his plea that he was taking Vicodin, a pain medication, but nonetheless affirmed to the court "that he understood what was going on during the plea hearing." *Id.* at ¶ 11. *See also State v. Summers*, 2d Dist. Greene No. 06CA66, 2007-Ohio-3168, ¶ 20 (affirming the trial court's judgment where defendant's statements during the plea hearing "belie[d] his subsequent claim that his ability to understand the

proceedings and enter a knowing, voluntary plea was affected by drugs he was taking").

{¶ 16} Although Ashley did advise the trial court at the time of his plea that he was taking "[p]sych meds," he expressly denied that those medications affected his ability to understand the plea proceedings, and explicitly confirmed that he understood everything that was taking place. (Tr., pp. 6-7). In light of Ashley's representations, it was not incumbent upon the trial court to delve further into that topic in order to comply with Crim.R. 11(C). *See Ketterer* at ¶ 75 (rejecting challenge to "the sufficiency of the trial court's inquiry into the medication [the defendant] was taking" and affirming judgment based on his guilty plea). Because the record contradicts Ashley's current suggestion that he "may" have been too impaired by psychotropic medications to understand the nature of the guilty plea proceedings, he has not demonstrated that his plea was not knowingly, intelligently, and voluntarily made.

{¶ 17} Furthermore, on a direct appeal, we are limited to considering only the record from the trial court. *See, e.g., State v. Gulde*, 2d Dist. Montgomery No. 28036, 2019-Ohio-300, ¶ 10. Our review of the plea hearing transcript reveals nothing that arguably could be indicative that Ashley was experiencing cognitive difficulties. Because nothing in the record corroborates Ashley's suggestion that the drugs he was taking "may" have affected his ability to fully comprehend the consequences of his guilty plea, we lack any cognizable basis for disrupting the trial court's judgment at this time.[1] Ashley's

---

[1] Nevertheless, we have recognized on numerous occasions that a defendant's claim to have been under the influence of drugs at the time of his guilty plea properly may be raised through a petition for postconviction relief. *See, e.g., State v. Harden*, 2d Dist. Montgomery No. 24603, 2012-Ohio-1657, ¶ 16; *State v. Johnson*, 2d Dist. Clark No. 98-CA-23, 1999 WL 174263, *1 (Mar. 26, 1999); *State v. Wombold*, 2d Dist. Montgomery No. 17191, 1999 WL 148029, *2 (Feb. 19, 1999); *State v. Vanderpool*, 2d Dist. Montgomery No. 16428, 1997 WL 797763, *3 (Dec. 31, 1997).

argument regarding his possible impairment at the time of his plea is not well taken.

b. *Communication breakdown with trial counsel*

**{¶ 18}** The sole basis Ashley cites for his second contention is the following limited exchange with the trial court during his plea hearing:

The Court: Have you had an opportunity to talk with [defense counsel] about this charge, including what the Prosecutor would have to prove in order for you to be found guilty of this offense, as well as any motions you could file, and any defenses there may be to this charge?

[Ashley]: No.

The Court: Well, she would've talked with you about it differently. She talked with you about the case, the charge, particularly this charge that you're entering a plea to, if there's any defenses and then what she recommended, is that correct?

[Ashley]: Yes.

(Tr., p. 11).

**{¶ 19}** Ashley contends that in light of the apparent "breakdown in communication" with counsel evidenced by that exchange, "the entirety of the record * * * seems" to show that he "was not aware of the *full* effect of this plea." (Emphasis sic.). Our review of the record does not support that conclusion. Asked by the trial court if he was satisfied with his trial attorney's representation, Ashley stated that he was. (Tr., p. 11). Earlier in the plea hearing, the trial court advised Ashley that his guilty plea would be "[a] complete admission of your guilt and you're giving up your right to appeal any pre-trial rulings"; he orally affirmed his understanding. (Tr., p. 9). Later, he was presented with and signed the

written plea form, which reiterated the constitutional rights he was waiving and the offense and potential sentence to which he was pleading. (Doc. #32). He previously confirmed that he had read and understood that form. (Tr., p. 6). Ashley also declined the court's invitation to ask additional questions of the court or his trial attorney before he stated his oral plea on the record. (Tr., p. 12). Nothing in the record contradicts the trial court's finding that Ashley "understood the effect of his plea" and made that plea "voluntarily." (*Id.*).

{¶ 20} Ashley's single assignment of error is overruled.

## Conclusion

{¶ 21} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Lisa M. Light
Kristin L. Arnold
Hon. Mary Katherine Huffman